# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

BARBARA J. FRIED; ALTITUDE )
PARTNERS, LLC; RICHARD D. )
MALTZMAN, AS TRUSTEE FOR THE )
RICHARD D. & CHARLENE MALTZMAN )
FAMILY TRUST; JEFFOREED  PARTNERS, )
L.P.; ZELFAM, LLC; on behalf of themselves )    No. 11 Civ. 4141 (LGS)
and other limited partners joining them, )
  )
           Plaintiffs, )
  )
  )
           v. )
  )
LEHMAN BROTHERS REAL ESTATE )
ASSOCIATES III, L.P.; LEHMAN )
BROTHERS PRIVATE EQUITY ADVISERS, )
LLC; REAL ESTATE PRIVATE EQUITY, )
INC., SILVERPEAK REAL ESTATE )
PARTNERS, LP; REPE CP MANAGECO, )
LLC; MARK A. WALSH; MARK H. )
NEWMAN; BRETT BOSSUNG; RODOLPHO )
AMBOSS; KEVIN DINNIE, MICHAEL J. )
ODRICH; CHRISTOPHER M. O'MEARA; )
RICHARD S. FULD, JR.; JOSEPH M. )
GREGORY; ERIN CALLAN; IAN LOWITT; )
THOMAS RUSSO; & JOHN DOE 1 through )
50, the final 50 names being fictitious and )
unknown to plaintiffs, the persons, or parties )
intended being persons jointly and/or severally )
liable with the named defendants for the wrongs )
alleged herein, )
  )
           Defendants. )

# DEFENDANTS' OPPOSITION TO PLAINTIFFS'
## SECOND MOTION TO REMAND AND "ALTERNATIVE" MOTION TO ABSTAIN

**TABLE OF CONTENTS**                                                 **PAGE**

PRELIMINARY STATEMENT ...................................................................................1

RELEVANT PROCEDURAL AND FACTUAL BACKGROUND ..............................3

    A.   Plaintiffs' Overlapping Federal and New York State Actions.......................4

    B.   Defendants Remove *Fried II* and Plaintiffs Unsuccessfully Seek to Remand .............5

    C.   Plaintiffs' Amended Complaint ...................................................................6

    D.   The Status of the Lehman Brothers Chapter 11 Proceedings and its Relation to this Action.............................................................................................................7

ARGUMENT ........................................................................................................8

  I.  This Court Had and Continues to Have "Related to" Jurisdiction Over this Action.............9

    A.   This Court's Prior Holding that "Related to" Jurisdiction Existed at the Time of Removal is Dispositive .................................................................................10

    B.   "Related to" Jurisdiction Would Exist Even if this Action Were Removed Today ....12

        1.   Confirmation of the Plan Does Not Alter this Court's Previous Finding that this Action Could Affect the Estate ..................................................12

        2.   Plaintiffs Have Not Demonstrated that Abstention Is Warranted ......16

            a. Mandatory Abstention………….……………………………………………………18

            b. Discretionary Abstention....................................................................22

  II.  This Court Retains Subject Matter Jurisdiction over the State Law Claims ......24

CONCLUSION.......................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

CASES:                                                                                   PAGE(S):

*In re 3G Props., LLC*,
    2010 WL 4027770 (Bankr. E.D.N.C. Oct. 14, 2010) ........................................................19

*In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*,
    2005 WL 1404796 (S.D.N.Y. June 14, 2005) ...................................................................17

*Allstate Ins. Co. v. Credit Suisse Sec. (USA) LLC*,
    2011 WL 4965150 (S.D.N.Y. Oct. 19, 2011) ....................................................................15

*In re Ames Dep't Stores, Inc.*,
    2008 WL 7542200 (S.D.N.Y. June 4, 2008),
    *aff'd*, 319 F. App'x 40 (2d Cir. 2009).................................................................................18

*In re Ames Dep't Stores, Inc.*,
    2006 WL 1288586 (Bankr. S.D.N.Y. Apr. 19, 2006),
    *aff'd*, 319 F. App'x 40 (2d Cir. 2009).................................................................................20

*Belcufine v. Aloe*,
    112 F.3d 633 (3d Cir. 1997)................................................................................................14

*In re Boston Reg'l Med. Ctr., Inc.*,
    410 F.3d 100 (1st Cir. 2005)...............................................................................................13

*In re Bozel S.A.*,
    434 B.R. 86 (Bankr. S.D.N.Y. 2010)............................................................................18, 22

*Breuer v. Jim's Concrete of Brevard, Inc.*,
    538 U.S. 691 (2003).............................................................................................................18

*Calingo v. Meridian Res. Co.*,
    2011 WL 3611319 (S.D.N.Y. Aug. 16, 2011) ...................................................................17

*Carnegie-Mellon Univ. v. Cohill*,
    484 U.S. 343 (1988)..........................................................................................................2, 24

*CCM Pathfinder Pompano Bay, LLC v. Compass Fin. Partners LLC*,
    396 B.R. 602 (S.D.N.Y. 2008)...........................................................................................21

*In re Celotex Corp.*,
    124 F.3d 619 (4th Cir. 1997) .....................................................................................2, 10, 11

*Celotex Corp. v. Edwards,*
    514 U.S. 300 (1995)........................................................................................12, 22

*Colo. River Water Conservation Dist. v. United States,*
    424 U.S. 800 (1976)........................................................................................22, 23

*In re Container Transport, Inc.,*
    86 B.R. 804 (E.D. Pa. 1988) .................................................................................19

*Fed. Deposit Ins. Corp. v. Four Star Holdings Co.,*
    178 F.3d 97 (2d Cir. 1999)....................................................................................10

*Foster v. Chesapeake Ins. Co.,*
    933 F.2d 1207 (3d Cir. 1991)................................................................................17

*Freeport-McMoRan, Inc. v. K N Energy, Inc.,*
    498 U.S. 426 (1991).............................................................................................10

*In re Freeway Foods of Greensboro, Inc.,*
    449 B.R. 860 (Bankr. M.D.N.C. 2011).................................................................19

*Fried v. Lehman Bros. Real Estate Assocs. III, L.P.,*
    2011 WL 1345097 (S.D.N.Y. Mar. 29, 2011) .......................................................4

*Fried v. Lehman Bros. Real Estate Assocs. III, L.P.,*
    2012 WL 6621300 (2d Cir. Dec. 20, 2012) ..........................................................6

*Groupo Dataflux v. Atlas Global Grp., L.P.,*
    541 U.S. 567 (2004).........................................................................................1, 10

*Hart v. Bello,*
    2011 WL 1584577 (S.D.N.Y. Apr. 27, 2011).......................................................23

*Koehnen v. Herald Fire Ins. Co.,*
    89 F.3d 525 (8th Cir. 1996) .................................................................................25

*Krys v. Sugrue,*
    2008 WL 4700920 (S.D.N.Y. Oct. 23, 2008) ......................................................19

*In re Lawrence,*
    233 B.R. 248 (N.D.N.Y. 1999).............................................................................14

*MacArthur Co. v. Johns-Manville Corp.,*
    837 F.2d 89 (2d Cir. 1988)..............................................................................13, 14

*Mazzolin v. Lehman Bros. Real Estate Fund III, L.P.,*
    2011 WL 4435649 (N.D. Ill. Sept. 23, 2011) ..................................................15, 16

*Mazzolin v. Lehman Bros. Real Estate Fund III, L.P.*,
 2012 WL 245192 (N.D. Ill. Jan. 25, 2012) ...................................................16

*Mister Sprout, Inc. v. Williams Farms Produce Sales, Inc.*,
 881 F.Supp. 2d 482 (S.D.N.y. 2012) .........................................................20

*In re MTBE Prods. Liab. Litig.*,
 522 F. Supp. 2d 557 (S.D.N.Y. 2007)...................................................16, 17

*Newby v. Enron Corp.*,
 535 F.3d 325 (5th Cir. 2008) ....................................................................11

*Nuveen Mun. Trust v. WithumSmith Brown, P.C.*,
 692 F.3d 283 (3d Cir. 2012)................................................................10, 11

*Pacor, Inc. v. Higgins*,
 743 F.2d 984 (3d Cir. 1984)......................................................................12

*In re Pan Am. Corp.*,
 950 F.2d 839 (2d Cir. 1991).......................................................................23

*Parmalat Capital Fin. Ltd. V. Bank of Am. Corp.*,
 639 F.3d 572 (2d Cir. 2011).................................................................20, 21

*In re Porges*,
 44 F.3d 159 (2d Cir. 1995)........................................................................11

*Purple Passion v. RCN Telecom Servs., Inc.*,
 406 F. Supp. 2d 245 (S.D.N.Y. 2005).......................................................12

*Rahl v. Bande*,
 316 B.R. 127 (S.D.N.Y. 2004)..............................................................22, 23

*In re Refco, Inc. Sec. Litig.*,
 628 F. Supp. 2d 432 (S.D.N.Y. 2008)..........................................12, 13, 22, 23

*In re River Ctr. Holdings LLC*,
 288 B.R. 59 (Bankr. S.D.N.Y. 2003) .........................................................14

*Ross v. Watkins*,
 2007 WL 1850869 (S.D. Tex. June 26, 2007) ...........................................17

*In re S.G. Phillips Constructors, Inc.*,
 45 F.3d 702 (2d Cir. 1995)...................................................................17, 19

*State of N.J., Dep't of Treasury v. Fuld*,
 2009 WL 1810356 (D.N.J. June 25, 2009),
 *appeal dismissed*, 604 F.3d 816 (3d Cir. 2010) ....................................14, 15

*Street v. End of the Road Trust,*
    386 B.R. 539 (D. Del. 2008) ................................................................18

*In re V & M Mgmt. Inc.,*
    321 F.3d 6 (1st Cir. 2003) ...................................................................18

*Winstar Holdings, LLC v. Blackstone Grp. L.P.,*
    2007 WL 4323003 (S.D.N.Y. Dec. 10, 2007) .....................................23

*In re WorldCom, Inc. Sec. Litg.,*
    294 B.R. 553 (S.D.N.Y. 2003)....................................................2, 10, 11

*Yong Quin Luo v. Mikel,*
    625 F.3d 772 (2d Cir. 2010) ................................................................12

STATUTES:

28 U.S.C. § 1331 ..........................................................................................1, 5

28 U.S.C. § 1334 ......................................................................................*passim*

28 U.S.C. § 1441 ..........................................................................................5, 6,

28 U.S.C. § 1447 ......................................................................................11, 16

28 U.S.C. § 1452 ......................................................................................5, 6, 9

OTHER AUTHORITIES:

1 Collier On Bankruptcy, 3.05[2] (Alan N. Resnick & Henry J. Sommer, 16th ed. 2010)...........19

14B Charles Alan Wright & Arthur R. Miller, Fed. Practice & Procedure § 3722 (4th ed. 2009) ................................................................................................24

14C Charles Alan Wright & Arthur R. Miller, Fed. Practice & Procedure § 3738 (4th ed. 2009) ................................................................................................24

H.R. Rep. No. 104-799 (1996)...............................................................17

Pub. L. No. 104-219, 110 Stat. 3022 (Oct. 1, 1996) ...............................17

Defendants Lehman Brothers Real Estate Associates III, L.P., Lehman Brothers Private

Equity Advisers, LLC, Real Estate Private Equity, Inc., Silverpeak Real Estate Partners, LP,

REPE CP ManageCo, LLC, Mark A. Walsh, Mark H. Newman, Brett Bossung, Rodolpho

Amboss, Kevin Dinnie, Michael J. Odrich, Christopher M. O'Meara, Richard S. Fuld, Jr., Joseph

M. Gregory, Erin Callan, Ian Lowitt and Thomas A. Russo ("Defendants") respectfully submit

this memorandum of law opposing Plaintiffs' Second Motion to Remand and Plaintiffs'

"alternative" Motion to Abstain.[1]

## PRELIMINARY STATEMENT

This Court previously held that this action properly belonged in federal court for two

independent reasons.  Holding that this action is "related to" the bankruptcy proceedings of

Lehman Brothers Holdings Inc. (so federal jurisdiction exists under 28 U.S.C. § 1334), and

substantial federal issues arose on the face of the complaint (so federal jurisdiction exists under

28 U.S.C. § 1331), this Court denied Plaintiffs' first motion to remand and rejected Plaintiffs'

first request to abstain.  Now asserting (erroneously) that the Lehman bankruptcy has

"terminated" and citing their Amended Complaint (which removes references to federal statutes),

Plaintiffs contend that both bases for subject matter jurisdiction have "evaporated" and again ask

this Court to remand this action.  Plaintiffs' position is legally and factually erroneous.  This

Court should again deny Plaintiffs' motion to remand and their "alternative" request to abstain.

It is "hornbook law" that subject matter jurisdiction is determined based on the facts and

circumstances existing at the time a complaint is filed in or removed to federal court.[2]

---

[1] The parties agreed to a briefing schedule for the remand motion that was "so ordered" on
January 25, 2013.  *See* Dkt. 41.  Although Plaintiffs never raised the filing of an "alternative"
motion, Defendants will respond to that motion in this opposition to the second remand motion.

[2] *See*, *e.g.*, *Groupo Dataflux v. Atlas Global Grp., L.P.*, 541 U.S. 567, 570 (2004).

Subsequent events, such as the confirmation of a bankruptcy plan or the amendment of a complaint, therefore, cannot divest a district court of subject matter jurisdiction over a properly removed action.  The reasons for this rule are plain.  In the "related to" bankruptcy context, for example, a court's constant reevaluation of the basis of its jurisdiction as a plan moves toward confirmation not only would promote inefficiencies and delays, but also would invite perverse incentives for the parties to engage in "delay and gamesmanship" in both the bankruptcy and related litigation in federal court.[3]  Thus, courts routinely have held that the confirmation of a bankruptcy plan does not oust a federal court of "related to" jurisdiction.[4]  *See infra* Point I.A. And Courts have reached the same determination concerning amendments to complaints that eliminate federal causes of action.[5]  *See infra* Point II.

In light of these principles and this Court's prior holding (which Plaintiffs do not now contest), it could not be clearer that this Court retains subject matter jurisdiction over this action notwithstanding the confirmation of the Lehman bankruptcy plan or the filing of Plaintiffs' Amended Complaint.  Nonetheless, even on the basis of the facts existing today, this Court has jurisdiction over this action.  Contrary to Plaintiffs' suggestion, the Lehman bankruptcy proceedings have not "terminated."  Rather, the Bankruptcy Court continues to oversee the administration of the bankruptcy plan and determine matters relating to, among other things, the distribution of assets to creditors.  As before, this action directly affects that process:  defendants here are drawing from (and will continue to draw from) Lehman-owned insurance policies that provide for litigation costs and damages (if liability is found).  Additionally, the Individual

---

[3] *See, e.g.*, *In re WorldCom Inc. Sec. Litig.*, 294 B.R. 553, 556-57 (S.D.N.Y. 2003) ("*Worldcom*").

[4] *See, e.g.*, *In re Celotex Corp.*, 124 F.3d 619, 626 (4th Cir. 1997).

[5] *See, e.g.*, *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343 (1988).

Defendants can assert indemnification claims against Lehman that would also draw from resources that would otherwise go to creditors.  Finally, Lehman owns a direct stake in several of the entity defendants.  The Court previously held that each of these factors demonstrated that the action was "related to" the Lehman bankruptcy.  The confirmation of the Lehman Plan does not alter that conclusion.  *See infra* Point I.B.1.

In addition, this Court has already declined Plaintiffs' request to abstain from exercising jurisdiction and Plaintiffs do not show why this Court should reverse that previous decision.  *See infra* Point I.B.2.  As a threshold matter, Plaintiffs' Motion to Abstain is untimely; the motion was filed well more than 30 days after removal and indeed even more than 30 days after Plaintiffs filed their Amended Complaint.  In any event, Plaintiffs have failed to demonstrate the requirements for either "mandatory" or "discretionary" abstention.  In addition to making an untimely motion, Plaintiffs have not shown that their lawsuit was "commenced" in state court prior to the Lehman bankruptcy or that the lawsuit could be "timely adjudicated" in state court.

Moreover, as an independent basis of jurisdiction, Plaintiffs concede that although the Amended Complaint removed references to federal statutes, this Court maintains discretion to exercise supplemental jurisdiction over this complaint.  And there are sound bases for the Court to continue to exercise such jurisdiction.  The proceedings are already underway in federal court, with Plaintiffs propounding document requests under the federal rules.  Moreover, the state law claims are ordinary, garden variety breach of contract and fiduciary duty claims that do not call on the expertise of a state court.  Furthermore, having amended their complaint in federal court to add additional claims, Plaintiffs have directly invoked the federal forum to seek relief.  *See infra* Point II.  At bottom, Plaintiffs have not shown why this Court, having already determined that this action properly belongs here, should reverse course and return it to state court.

**RELEVANT PROCEDURAL AND FACTUAL BACKGROUND**

A.      Plaintiffs' Overlapping Federal and New York State Actions

On October 30, 2009, plaintiffs brought a purported class action in this Court against the same defendants in this action entitled *Fried, et al. v. Lehman Brothers Real Estate Associates III, L.P., et al.*, No. 09-9100 (S.D.N.Y.) ("*Fried I*").  The Second Amended Complaint in *Fried I* alleged causes of action arising under the federal securities laws, including § 10(b) of the Securities Exchange Act of 1934, and New York and Delaware law.

The *Fried I* Complaint generally alleged that defendants defrauded investors in Lehman commercial real estate investment partnerships by omitting material information regarding the value of properties transferred into the partnerships' portfolios.  Specifically, plaintiffs alleged that defendants knew or should have known that certain "warehoused" Lehman commercial real estate properties had lost value since Lehman purchased them, and that the transfer of these properties to the partnerships' portfolios would cause the partnerships to sustain losses.

This Court granted defendants' motion to dismiss on March 29, 2011.  *See Fried I*, 2011 WL 1345097 (S.D.N.Y. Mar. 29, 2011).  The Court held that plaintiffs' federal securities claims failed because plaintiffs did not adequately allege that defendants knew or should have known that the transfer of the properties to the partnerships' portfolios would have caused the partnerships to sustain losses.  *See id.* at *8.  The Court dismissed plaintiffs' federal securities claims with prejudice and declined to exercise supplemental jurisdiction over the remaining state-law claims.  *See id.* at *13.  A subset of plaintiffs appealed that decision to the Second Circuit.  (As noted *infra* at p. 6, the Second Circuit affirmed that dismissal.)

On May 27, 2011, while the appeal was pending, the Plaintiffs herein (a different subset of the *Fried I* plaintiffs) filed a complaint against Defendants in the Supreme Court of the State of New York, County of New York entitled *Fried, et al. v. Lehman Brothers Real Estate Associates III, L.P., et al.*, No. 6514621/2011 ("*Fried II*").  The *Fried II* Complaint recycled the

4

same alleged fraudulent scheme and advanced the same underlying facts and legal issues as the *Fried I* Complaint.  Although filed in state court, the *Fried II* Complaint raised important federal questions and asserted federal causes of action.  Specifically, Plaintiffs alleged that Defendants breached fiduciary duties imposed under federal statutes, the Investment Advisers Act of 1940 and the Investment Company Act of 1940, and expressly invoked remedies under those statutes.

### B.  Defendants Remove *Fried II* and Plaintiffs Unsuccessfully Seek to Remand

Defendants removed the *Fried II* action to this Court on June 17, 2011.  In addition to federal question jurisdiction under 28 U.S.C. § 1331, Defendants removed the *Fried II* action under 28 U.S.C. §§ 1334, 1441 and 1452, because the *Fried II* action was "related to" the ongoing Chapter 11 bankruptcy proceedings of Lehman Brothers Holdings Inc., pending in the U.S. Bankruptcy Court for the Southern District of New York (No. 08-13555 (JMP)).  Specifically, Defendants maintained that the *Fried II* action would affect the assets and administration of the Lehman Brothers bankruptcy for at least three reasons: (1) Defendants here are entitled to draw on insurance policies that are the property of the Lehman Brothers estate; (2) Lehman Brothers (or one of its subsidiaries) is obligated to indemnify Defendants for any potential money damages or award of fees if they are found liable in the *Fried II* action; and (3) the Lehman Brothers estate owns a significant direct and indirect stakes in certain of the Defendants.  In addition, given the overlap in common questions of fact and law between the *Fried I* and *II* actions, Defendants moved to stay the *Fried II* action pending a final decision on the *Fried I* Second Circuit appeal.  Plaintiffs thereafter moved to remand *Fried II* to state court.

On January 25, 2012, this Court denied Plaintiffs' motion to remand.  *See* Dkt. 27.  The Court found two independent bases for federal jurisdiction over the *Fried II* Complaint.  *First*, the Court held that it had subject matter jurisdiction because "[f]ederal issues arise plainly on the face of Count V and Count VI of the Complaint."  *Id.* at 5.

*Second*, the Court held that it could exercise jurisdiction over the *Fried II* action under 28 U.S.C. §§ 1334(b), 1441 and 1452(a), because it is "related to" the ongoing Chapter 11 bankruptcy proceedings of Lehman Brothers Holdings Inc.  *See* Dkt. 27 at 9.  The Court held that "a lawsuit is 'related to' a title 11 proceeding when the [lawsuit] 'might have any 'conceivable effect' on the bankrupt estate.'"  *Id.* at 10.  The Court further held that "there are several conceivable ways in which the outcome of this lawsuit could affect the bankrupt estate" including that (1) the liability of certain Defendants "is covered by insurance policies of the bankrupt estate"; (2) certain of the Defendants "may be able to seek indemnification from the bankrupt estate for the costs of defending themselves in this lawsuit"; and (3) the Lehman Brothers estate owns direct and indirect stakes in certain of the Defendants and "any damages found against these particular defendants could affect the value of the bankrupt estate."  *Id.* at 10-11.  Moreover, the Court rejected Plaintiffs' request to remand the case under the doctrines of mandatory and discretionary abstention, holding, *inter alia*, that "Plaintiffs have not provided enough evidence to show that this action would be timely adjudicated in state court."  *Id.* at 11.

*Finally*, the Court granted Defendants' motion to stay *Fried II* pending the Second Circuit's resolution of the *Fried I* appeal.  *See id.* at 15.  On December 20, 2012, the Second Circuit issued a summary order affirming this Courts' dismissal of the *Fried I* Complaint.  *See Fried v. Lehman Bros. Real Estate Assocs. III*, 2012 WL 6621300 (2d Cir. Dec. 20, 2012).  The *Fried II* stay expired on January 10, 2013, when the Second Circuit's mandate issued.

### C.    Plaintiffs' Amended Complaint

Plaintiffs filed an Amended Complaint on February 28, 2013.  The Amended Complaint alleges the same general theory of wrongdoing as its predecessor, but no longer asserts violations of the Investment Advisers Act or the Investment Company Act.  The Amended Complaint alleges fourteen state-law causes of action, including several claims, such as for fraudulent

concealment and fraudulent inducement, that were not alleged in the initial complaint.

On March 6, 2013, Plaintiffs filed a second motion to remand, contending that the bases for subject matter jurisdiction over this action had "evaporated."  Although not provided for in the Court's scheduling order, on April 5, 2013, Plaintiffs filed yet another "alternative" motion to remand—this time styled as a Motion to Abstain—contending that even if "related to" jurisdiction still existed, this Court should abstain from exercising jurisdiction and remand the action to state court.  Plaintiffs' new Motion to Abstain fails to acknowledge that this Court previously considered and rejected Plaintiffs' previous request to abstain.  *See* Dkt. 27 at 11.

### D.   The Status of the Lehman Brothers Chapter 11 Proceedings and its Relation to this Action

On September 15, 2008, Lehman Brothers Holdings Inc. filed a case under Chapter 11 of the Bankruptcy Code in the U.S. Bankruptcy Court for the Southern District of New York, *Lehman Brothers Holdings Inc.*, No. 08-13555 (Bankr. S.D.N.Y. Sept. 15, 2008).  The Bankruptcy Court confirmed Lehman's reorganization plan (the "Lehman Plan") on December 6, 2011, and the Plan became effective on March 6, 2012.  *See* Carangelo Decl. Exs. A and B.  The confirmation and the effective date of the Lehman Plan did not, however, end Lehman's bankruptcy proceedings or close the Chapter 11 case.  To the contrary, the Chapter 11 case remains open and pending in the Bankruptcy Court as that court oversees the administration and implementation of the Lehman Plan.  For example, the Bankruptcy Court continues to hear and determine, among other things, adversary proceedings, avoidance actions and claims determinations.  Indeed, as *The Wall Street Journal* article Plaintiffs rely on states, "[Lehman's] case is far from over and will likely continue for years as it liquidates its assets."  *See* Parker Decl. Ex. A.  (The current docket available at www.lehman-docket.com.)

Accordingly, notwithstanding the confirmation of the Lehman Plan, this litigation has had

and continues to have a direct impact on the administration of the bankruptcy. *First*, all Defendants are entitled to insurance coverage for this Action under one or more policies issued to Lehman Brothers, which are assets of the Lehman Brothers estate. Specifically, Defendants Lehman Brothers Real Estate Associates III, L.P., Lehman Brothers Private Equity Advisers, LLC and Real Estate Private Equity, Inc., as Lehman Brothers-related entities, have and continue to draw upon a Lehman Brothers-owned insurance policy to fund this litigation and any potential money damages award or fees if found liable in this Action. *See* Declaration of Ashvin Rao in Support of Defendants' Response in Opposition to Plaintiffs' Motion to Remand ("Rao Decl.") ¶ 6. In addition, each and every Individual Defendant, as a former officer and/or director of Lehman Brothers and/or a Lehman Brothers subsidiary, has asserted and can continue to assert a claim upon a Lehman Brothers-owned insurance policy to fund his or her costs of defense of the litigation in this Action and any potential money damages award if found liable. *See id.* ¶¶ 7-8.

Second, Lehman Brothers or a Lehman Brothers subsidiary, in which Lehman Brothers owns a substantial or 100 percent direct or indirect stake, is obligated to indemnify the Individual Defendants for any potential money damages award or fees if found liable in this Action. *See* Rao Decl. ¶ 9; *see also* Carangelo Decl. Ex. C. Most of these individuals have filed contingent proofs of claim in the bankruptcy proceeding, and thus can recover from the assets of the estate should they be found liable in this litigation. *See* Carangelo Decl. Exs. D, E, F, G, H, I, J, K.

Third, Lehman Brothers owns a significant indirect stake in Defendant Lehman Brothers Real Estate Associates III, L.P. *See* Rao Decl. ¶ 3. Lehman Brothers also owns a 100 percent direct stake in both defendant Lehman Brothers Private Equity Advisers, LLC and defendant Real Estate Private Equity, Inc. *See id.* ¶¶ 4-5.

## ARGUMENT

This Court previously held that this action properly belongs in this Court for two

independent reasons—it is "related to" the Lehman Brothers bankruptcy proceedings and raises important federal questions.  Although Plaintiffs concede that they "have no present quarrel" with this Court's prior decision, they nonetheless ask the Court to return the action to state court, contending that subsequent events—the confirmation of the Lehman bankruptcy plan and the filing of their Amended Complaint—have erased the bases for federal jurisdiction.  Plaintiffs are wrong.  It is well established that subject matter jurisdiction and the propriety of removal are determined *at the time of removal* and that subsequent developments—including the confirmation of a bankruptcy plan or the filing of an amended complaint—do not divest the Court of jurisdiction.  Plaintiffs' motion entirely ignores this line of authority.  And, in any event, it is clear that federal subject matter jurisdiction exists today.

## I.     This Court Had and Continues to Have "Related to" Jurisdiction Over this Action

Federal district courts have jurisdiction over "all civil proceedings arising under Title 11 or arising in or *related to* cases under Title 11."  28 U.S.C. § 1334.[6]  As this Court previously held, a "lawsuit is 'related to' a title 11 proceeding when the [lawsuit] 'might have "*any conceivable effect*" on the bankrupt estate.'" Dkt. 27 at 10.[7]  And, as this Court also previously held, "there are several conceivable ways in which the outcome of this lawsuit could affect the bankrupt estate of Lehman Brothers Holdings Inc.," so it is law of the case that related to jurisdiction existed at the time of removal.  *Id.*  Because jurisdiction is determined based on circumstances existing at the time of removal, this Court's prior holding confirms that the Court continues to have "related to" jurisdiction over this action.  Moreover, because the action

---

[6] 28 U.S.C. 1452(a) provides in turn that "[a] party may remove any claim or cause of action in a civil action . . . to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title."

[7] Unless otherwise noted, all internal citations are omitted and all emphasis is added.

continues to have the potential to affect the administration of the Lehman Plan, this Court would have "related to" jurisdiction over this action even if it were filed today.

### A.     This Court's Prior Holding that "Related to" Jurisdiction Existed at the Time of Removal is Dispositive

This Court's prior holding that "related to" jurisdiction existed at the time of removal is dispositive of the jurisdictional inquiry here.  "It has long been the case that 'the jurisdiction of the Court depends upon the state of things at the time of the action brought.' . . . This time-of-filing rule is hornbook law."  *Groupo Dataflux v. Atlas Global Grp. L.P.*, 541 U.S. 567, 570 (2004).[8]  Courts have applied this fundamental precept in the context of "related-to" jurisdiction and removal.  As the court in *WorldCom* explained, "federal jurisdiction arising under Section 1334 is determined, like federal jurisdiction generally, on the basis of the facts *at the time of removal*."  *Id.* at 556.  The "related to" analysis, the court held, "does not require federal district courts constantly to revisit jurisdictional findings to determine whether the effect of the litigation on the bankruptcy estate remains 'conceivable.'"  *Id.*  As another court, on which Plaintiffs heavily rely, put it, "[c]onceivability is determined *at the time a lawsuit is filed*."  *Nuveen Mun. Trust v. WithumSmith Brown, P.C.*, 692 F.3d 283, 294 (3d Cir. 2012).  Thus, courts have routinely held that "if 'related to' jurisdiction actually existed at the time of [defendant's] removal" then a subsequent event "could not divest the court of that subject matter jurisdiction."  *In re Celotex Corp.*, 124 F.3d 619, 626 (4th Cir. 1997).

Accordingly, this Court's prior holding (now law of the case) that "related to" jurisdiction existed at the time of removal controls the outcome here; subsequent events cannot "divest" the

---

[8] *See also Freeport-McMoRan, Inc. v. K N Energy, Inc.*, 498 U.S. 426, 428 (1991) ("We have consistently held that if jurisdiction exists at the time an action is commenced, such jurisdiction may not be divested by subsequent events."); *Fed. Deposit Ins. Corp. v. Four Star Holdings Co.*, 178 F.3d 97, 100 (2d Cir. 1999) ("[T]he existence of federal jurisdiction ordinarily depends on the facts as they exist when the complaint is filed.").

court of such jurisdiction.  *See id.*  Plaintiffs nonetheless suggest that "related to" jurisdiction "evaporate[d]" once the Lehman bankruptcy plan was confirmed.  But courts have soundly rejected the argument that the confirmation of a bankruptcy plan divests this Court of "related to" jurisdiction over actions filed pre-confirmation that, like Plaintiffs' here, were properly removed. *See Newby v. Enron Corp.*, 535 F.3d 325, 336 (5th Cir. 2008) ("[Plaintiff] cannot point to a single case in which we have held that plan confirmation divests a District Court of bankruptcy jurisdiction over pre-confirmation claims based on pre-confirmation activities that properly had been removed pursuant to 'related to' jurisdiction.  We likewise find none."); *see also Nunveen*, 692 F.3d at 294 ("[T]he strength and longevity of this [time-of-filing] rule has led courts to hold that confirmation of a bankruptcy plan does not divest a district court of related-to jurisdiction over pre-confirmation claims.") (collecting cases); *In re Celotex*, 124 F.3d at 626 (same).

Not only do Plaintiffs entirely ignore the time-of-filing rule and its application in "related to" cases, but they also provide no argument for why the Court should put that rule aside here. This is not surprising considering that there are strong policy reasons why federal courts should not continually reevaluate "related to" jurisdiction throughout the course of a litigation.  As Judge Cote observed in *WorldCom*, "adopting a rule that would divest federal courts of subject matter jurisdiction over actions 'related to' a bankruptcy estate as the confirmation of the reorganization plan grew near would create perverse incentives for the parties to engage in delay and gamesmanship in both the bankruptcy reorganization and the related litigation.  Even if the Plan is confirmed and the bankruptcy case dismissed, this Court will retain jurisdiction."  *Id.* at 557 (citing *In re Porges*, 44 F.3d 159, 162 (2d Cir. 1995)).  Plaintiffs have offered nothing to suggest why this same analysis should not govern here.[9]  At bottom, this Court has already held

---

[9] Plaintiffs cite 28 U.S.C. § 1447(c), which provides that a district court shall remand a case to state court if "it appears that the district court lacks subject matter jurisdiction."  But this

(and Plaintiffs do not now challenge) that "related to" jurisdiction existed at the time of removal. That holding should end the inquiry; federal jurisdiction over a properly removed "related to" case does not "evaporate" upon confirmation of a bankruptcy plan.

**B.**    **"Related to" Jurisdiction Would Exist Even if this Action Were Removed Today**

**1.**    **Confirmation of the Plan Does Not Alter this Court's Previous Finding that this Action Could Affect the Estate**

In any event, even assuming (incorrectly) that jurisdiction is determined on the basis of circumstances as they exist today, rather than at the time of removal, there still is "related to" jurisdiction over this action.  The Supreme Court has emphasized that the federal courts' "related to" jurisdiction is purposely broad.  In enacting § 1334, "'Congress intended to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected to the bankruptcy estate'" and thus "the 'related to' language of § 1334(b) must be read to give district courts (and bankruptcy courts under § 157(a)) jurisdiction over more than simple proceedings involving the property of the debtor estate." *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 (1995) (citing with approval *Pacor, Inc. v. Higgins*, 743 F.2d 984 (3d Cir. 1984)).  Accordingly, as explained above, "the general test for 'related to' jurisdiction under § 1334(b) examines whether the outcome of an action 'might have *any conceivable effect*' on the bankrupt estate."  *In re Refco Sec. Litig.*, 628 F. Supp. 2d 432, 441 (S.D.N.Y. 2008) (emphasis in original).  Plaintiffs agree that this is the governing standard.  *See* Pl. Abstention Mot. at 11 ("*Pacor* set the standard that a proceeding is related to a Chapter 11 proceeding if the outcome of the proceeding could conceivably have any effect on the estate

---

provision does not divest federal courts of jurisdiction based on *subsequent developments* after a complaint has been removed.  *See Purple Passion v. RCN Telecom Servs.*, 406 F. Supp. 2d 245, 245-47 (S.D.N.Y. 2005); *Yong Quin Luo v. Mikel*, 625 F.3d 772, 776 (2d Cir. 2010).

being administered in bankruptcy.").[10]

This Court has already held that "there are several conceivable ways in which the outcome of this lawsuit could affect the bankrupt estate." Dkt. 27 at 10.  Not only do Plaintiffs virtually ignore this previous holding, but they offer no explanation of how the confirmation of the Lehman Plan alters the Court's previous analysis.  *First*, Defendants in this action can still draw upon Lehman Brothers-owned insurance policies to fund both the litigation costs and any potential money damages award or fees if found liable.  These insurance policies directly implicate the estate's property:  "Numerous courts have determined that a debtor's insurance policies are property of the estate, subject to the bankruptcy court's jurisdiction."  *MacArthur Co.*

---

[10] To be sure, some courts have applied a narrower standard to evaluate "related to" jurisdiction in the post-confirmation context.  *See Refco*, 628 F. Supp. 2d at 441.  But a narrower standard has no application here for at least two reasons.  *First*, courts have applied a narrower standard only to complaints that—unlike the *Fried II* Complaint—are filed *post*-confirmation and allege only *post*-confirmation activity.  *Second*, courts have resisted applying a narrower standard when the reorganization plan is primarily established for the purpose of liquidating the estate's assets, as the Lehman Plan concededly is.  *See* Pl. Abstention Mot. at 9 ("Plan implementation involves liquidation not reorganization").  The First Circuit has held that "there is much less reason to depart from the general rule for related to jurisdiction where a claim involves a liquidating plan of reorganization."  *In re Boston Reg'l Med. Ctr., Inc.*, 410 F.3d 100, 106 (1st Cir. 2005); *see also Refco*, 628 F. Supp. 2d at 442 ("Several courts in this circuit have cited the First Circuit's approach approvingly.").

Nonetheless, even applying a narrower standard, "related to" jurisdiction still exists here.  Courts applying such a standard have held that "related to" jurisdiction exists over actions filed post-confirmation if (1) the matter has a "close nexus to the bankruptcy plan or proceeding, as when a matter affects the interpretation, implementation, consummation, execution or administration of the confirmed plan" and (2) the plan "provide[s] for the retention of jurisdiction over the dispute."  *Id.* at 442-43.  As explained *infra* at pp. 14-16, this action affects the implementation, execution and administration of the Lehman Plan because it has a direct impact on the assets of the estate, including, *inter alia*, the potential depletion of Lehman-owned insurance policies and the potential to impose obligations on defendants that are wholly or partially owned by the Lehman estate.  In addition, the Plan retains jurisdiction over this dispute.  The Plan provides for the retention of jurisdiction of "all matters arising under, arising out of, or *related to,* the Chapter 11 cases."  *See* Carangelo Decl. Ex. A at 90 ¶ 14.1; *see also id.* at 91 ¶ 14.1(o) (providing for retention of jurisdiction "to hear any other matter consistent with the provisions of the Bankruptcy Code"); *Id.* Ex. B at 23 ¶ RR (the court is "authorized to retain jurisdiction over the matters set forth in Article XIV of the Plan and Section 1142 of the Bankruptcy Code").

*v. Johns-Manville Corp.*, 837 F.2d 89, 92 (2d Cir. 1988) (collecting cases).[11]   Indeed, the effect

on Lehman Brothers' assets is currently ongoing, as Defendants' defense costs are being covered

by, and depleting the pool of funds available to, Lehman-owned insurance policies.

      Plaintiffs do not argue (because they cannot) that the confirmation of the Lehman Plan (or

any other intervening development since the Court's prior ruling) alters any of Defendants' rights

under the insurance policies.  Instead, Plaintiffs offer a convoluted argument that the insurance

policies are too remote to convey "related to" jurisdiction because there is a possibility that a

"second action" would be required to determine whether the policies covered Plaintiffs' claims

for intentional fraud.  *See* Pl. Abstention Mot. at 11-12.  But even accepting Plaintiffs' argument

(for which they have offered no authority), the Amended Complaint also alleges run-of-the-mill

breach of contract and negligence claims that are unquestionably covered.[12]       *Second*, this

Court previously found "related to" jurisdiction because the Lehman estate is obligated to

indemnify the Individual Defendants for litigation costs and liabilities.  *See* Dkt. 27 at 11.

Courts, including those cited by Plaintiffs, agree.  *See In re River Ctr. Holdings*, 288 B.R. 59, 65

(Bankr. S.D.N.Y. 2003) ("If the obligation of the debtor to indemnify is 'contractual and

absolute,' courts have held that the third party litigation is related to the bankruptcy case. Indeed,

even if the obligation is not contractual and absolute, 'related to' jurisdiction exists if the

disputed or conditional indemnity claims has a 'reasonable legal basis.'").[13]

---

[11] *See also In re Lawrence*, 233 B.R. 248, 252 (N.D.N.Y. 1999) (holding that "[a]ctions which could diminish the pool of funds available on an insurance policy held by the Debtor" can satisfy the test for related to jurisdiction).

[12] It is hard to see how Plaintiffs' claims for intentional fraud could be maintained in light of *Fried I*'s holding that Plaintiffs failed to allege that Defendants acted with fraudulent intent.

[13] *See also Belcufine v. Aloe*, 112 F.3d 633, 636 (3d Cir. 1997) (Alito, J.); *State of N.J., Dep't of Treasury v. Fuld*, 2009 WL 1810356 (D.N.J. June 25, 2009) (denying motion to remand action against Lehman Brothers officers and directors, including certain of the Individual Defendants in

Plaintiffs again fail to demonstrate how anything that has occurred since this Court's prior ruling undermines its holding that Lehman's indemnification obligations "conceivably" could affect the bankruptcy estate.  Instead, Plaintiffs complain that Defendants have not produced copies of proofs of claim filed by the Individual Defendants.  But, as is easily ascertainable on the public docket, most of the Individual Defendants have filed contingent proofs of claim in the bankruptcy proceedings asserting that they should be indemnified against all claims and losses in this Action.  *See* Carangelo Decl. Exs. D, E, F, G, H, I, J, K.  Should those defendants be found liable for covered damages, fees or expenses, their claims might have to be paid by the estate, further depleting Lehman Brothers' assets.

Finally, this Court also previously held that this action could "conceivably" affect the bankruptcy estate because Lehman owns a significant indirect stake in Lehman Brothers Real Estate Associates III, L.P., and a 100 percent direct stake in both Lehman Brothers Private Equity Advisers, LLC, and Real Estate Private Equity, Inc.  *See* Dkt. 27 at 11.  Plaintiffs ignore this previous holding.  Given that Lehman continues to own such stakes post-confirmation, *see* Rao Decl. ¶¶ 3-5, if these Defendants are held liable for damages, the payout of damages will directly draw from the bankrupt entity's assets.

In sum, this Court previously held that this action "conceivably" could affect the administration of the Lehman bankruptcy and Plaintiffs have not even attempted to show how anything that has occurred in the interim in any way changes that conclusion.[14]

---

this action), *appeal dismissed*, 604 F.3d 816 (3d Cir. 2010); *Allstate Ins. Co. v. Credit-Suisse Secs.*, 2011 WL 4965150, at *4 (S.D.N.Y. Oct. 19, 2011) (cited by Plaintiffs) ("The Bankrupt Originators' possible indemnification obligation should the defendants lose the underlying action is a potentiality that has previously been found to constitute a 'conceivable effect.'").

[14] At this Court's April 15, 2013 hearing on Defendants' motion to stay discovery, Plaintiffs cited for the first time decisions of an Illinois federal district court remanding an action against a different Lehman-related entity to state court.  *See Mazzolin v. Lehman Bros. Real Estate Fund*

### 2.   Plaintiffs Have Not Demonstrated that Abstention Is Warranted

Section 1334 provides that, upon a party's timely motion, a court may (or in some cases, must) abstain from exercising "related to" jurisdiction.  *See* 28 U.S.C. § 1334(c)(1) ("discretionary" abstention) & (c)(2) ("mandatory" abstention).  This Court previously declined to abstain, finding that Plaintiffs had not carried their burden to satisfy the requirements of "mandatory" abstention and rejected Plaintiffs' requests for "discretionary" abstention.  *See* Dkt. 27 at 11; *see also* Dkt. 19 (Plaintiffs' first motion to remand).  Plaintiffs have not shown a sufficient basis for this Court to revisit—let alone reverse—its previous holdings.

As a threshold matter, Plaintiffs cannot now raise abstention as a basis for remand.  In enacting the remand statutes, Congress was "concerned with eliminating repetitive motions for remand, which drain the resources of the parties and court alike."  *In re MTBE Prods. Liab. Litig.*, 522 F. Supp. 2d 557, 567-68 (S.D.N.Y. 2007).  Thus, 28 U.S.C. § 1447(c) provides that "a

---

*III, L.P.*, 2011 WL 4435649 (N.D. Ill. Sept. 23, 2011); *Mazzolin v. Lehman Bros. Real Estate Fund III, L.P.*, 2012 WL 245192 (N.D. Ill. Jan. 25, 2012).  Notwithstanding that one of these decisions was filed *before* this Court's previous order denying remand (and the other filed the same day as this Court's order), Plaintiffs waited until April 15, 2013—*after* filing both their motion to remand and their "alternative" Motion to Abstain—to claim that these decisions are relevant here.

Nonetheless, *Mazzolin* has no bearing here for at least three reasons.  *First*, Judge Jones already determined that *this* action is "related to" the Lehman bankruptcy.  That holding is law of the case and, as discussed *supra* at pp. 13-15, nothing that has occurred in the interim alters Judge Jones's analysis.  *Second*, *Mazzolin* named different defendants.  Specifically, none of the Individual Defendants—who can assert indemnification claims against the estate—were defendants in *Mazzolin*, and the absence of indemnification arrangements was dispositive in *Mazzolin*.  *See Mazzolin*, 2012 WL 245192, at *4.  Nor was Defendant Lehman Brothers Real Estate Associates III ("LBREA"), the General Partner, a defendant in *Mazzolin*.  This fact, too, was important to *Mazzolin*:  "Notably, neither LBH nor LBREA are parties to this action." *Mazzolin*, 2011 WL 4435649, at *1.  *Finally*, *Mazzolin* applied a different, narrower standard for "related to" jurisdiction that is at odds with the Second Circuit standard that controls here.  As *Mazzolin* acknowledged, "Unlike appellate courts in other circuits, which have interpreted 'related to' jurisdiction broadly to encompass all proceedings that '*could conceivably have an effect on the bankruptcy estate*,' . . . the Seventh Circuit has established a more limited definition of 'related to' jurisdiction."  *Mazzolin*, 2011 WL 4435649, at *3 (emphasis in original).

motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal."  "[O]nce thirty days ha[ve] elapsed after the notice of removal has been filed, the *only* ground for a remand is lack of subject matter jurisdiction." *MTBE*, 522 F. Supp. 2d at 565-66 (emphasis original).

Abstention is distinct from subject matter jurisdiction: "the abstention provisions implicate the question whether the bankruptcy court should exercise jurisdiction, not whether the court has jurisdiction in the first instance."  *In re S.G. Phillips Constructors*, 45 F.3d 702, 708 (2d Cir. 1995); *see also Calingo v. Meridian Res. Co.*, 2011 WL 3611319, at *4 (S.D.N.Y. Aug. 16, 2011) ("an abstention principle . . . is not a matter of subject matter jurisdiction."). Therefore, any motion seeking remand on the basis of abstention—not lack of subject matter jurisdiction—must have been made within 30 days of removal.  *See Ross v. Watkins*, 2007 WL 1850869, at *2 (S.D. Tex. June 26, 2007) (30-day limit applies to mandatory abstention motions).[15]  Not only was Plaintiffs' latest motion filed well more than 30 days after this case was removed (and after this Court already declined to abstain), it was filed more than 30 days after Plaintiffs filed their Amended Complaint, as Plaintiffs acknowledge.  *See* Pl. Abstention Mot. at 4.

Plaintiffs' request for abstention fails for a second threshold reason: they have consented to a federal forum.  Courts have held that because abstention is not jurisdictional, parties can

---

[15] The court in *In re Adelphia Communications*, 2005 WL 1404796 (S.D.N.Y. June 14, 2005) came to a different conclusion relying on the Third Circuit's decision in *Foster v. Chesapeake Ins. Co.*, 933 F.2d 1207 (3d Cir. 1991).  *Foster*, however, considered a now-superseded version of section 1447(c), which imposed the 30-day limit only on motions to remand based on defects in "removal *procedure*."  In 1996, Congress amended section 1447(c) by deleting the reference to "removal procedure," and prohibiting instead all remand motions made after 30 days based on "*any* defect other than lack of subject matter jurisdiction."  *See* Pub. L. No. 104-219, 110 Stat. 3022 (Oct. 1, 1996); *see also* H.R. Rep. No. 104-799, at 2 (1996) (noting that Congress intended to "impose a 30-day limit on *all* motions to remand except in those cases where the court lacks subject matter jurisdiction."); *MTBE*, 522 F. Supp. 2d at 564 & n.51 (same).

waive abstention—even "mandatory" abstention under section 1332(c)(2)—by consenting to federal jurisdiction in a forum selection clause. *See, e.g.*, *Street v. End of the Road Trust*, 386 B.R. 539, 547 (D. Del. 2008) ("[T]he valid forum selection clauses entered into by Street constitute a waiver of any right to mandatory abstention under section 1332(c)(2)."); *In re V & M Mgmt. Inc.*, 321 F.3d 6, 8 (1st Cir. 2003) ("the abstention provision [is] waivable by the parties"). Here, in the Partnership Agreement, Plaintiffs "irrevocably submit[ted] to the jurisdiction of *both* [the Supreme Court of the State of New York and the United States District Court for the Southern District of New York]" and "waive[d], to the fullest extent permitted by law, any objection that they may now have or hereafter have to the laying of venue of any such action or proceeding" in either of those courts. *See* Carangelo Decl. Ex. L at § 11.16(a).

Nonetheless, any argument for either "mandatory" or "discretionary" abstention would fail. Once "related to" jurisdiction is established, the burden is placed on the party advocating abstention. *See In re Ames Dep't Stores, Inc*., 2008 WL 7542200, at *8 (S.D.N.Y. June 4, 2008), *aff'd*, 319 F. App'x 40 (2d Cir. 2009) ("[a] party seeking mandatory abstention must prove each of [§ 1334(c)(2)'s requirements]")[16] This Court previously held that Plaintiffs had failed to carry their burden. Nothing in Plaintiffs' "alternative" abstention motion cures those defects.

### a.    Mandatory Abstention

Pursuant to 28 U.S.C. § 1334(c)(2), a court is required to abstain from exercising jurisdiction if, and only if, the plaintiff demonstrates each and every one of the following six requirements:  (1) the motion to abstain is timely; (2) the action is based upon a state law cause of action; (3) the action is related to a case under title 11 but does not arise under title 11 or arise

---

[16] *See also In re Bozel S.A.*, 434 B.R. 86, 102 (Bankr. S.D.N.Y. 2010) ("The movant bears the burden of establishing that permissive abstention is warranted."); *Breuer v. Jim's Concrete of Brevard, Inc*., 538 U.S. 691, 698 (2003) (same).

in a case under title 11; (4) the action could not have been commenced in federal court absent

jurisdiction under 28 U.S.C. § 1334; (5) the state court action has commenced, and (6) the state

court action can be timely adjudicated.  *See* 28 U.S.C. § 1334(c)(2); *see also Krys v. Sugrue*,

2008 WL 4700920, at *9 (S.D.N.Y. Oct. 23, 2008) ("'A party is not entitled to mandatory

abstention if it fails to prove any one of the statutory requirements.'").  Here, Plaintiffs did not

(and cannot) satisfy several of the mandatory abstention requirements.

 *First*, as discussed *supra* at pp. 7, 17-18, Plaintiffs' abstention motion is not "timely."

This Court already declined Plaintiffs' nearly identical request to abstain more than a year ago.

Plan confirmation—one interim development—became effective on March 6, 2012, also more

than a year ago.[17]  And Plaintiffs delayed more than 30 days after filing their Amended

Complaint (and nearly as long after filing their second remand motion) to bring this Motion to

Abstain.

 *Second*, under the fifth mandatory abstention requirement, "the cause of action must have

been commenced prior to the filing of the petition commencing the title 11 case."  1 Collier on

Bankruptcy, 3.05[2] (Alan N. Resnick & Henry J. Sommer, 16th ed. 2010).[18]  It would be

inconsistent with principals of comity to seize jurisdiction over an action a state court had been

adjudicating simply because a non-party to that action filed for bankruptcy.  There is no such

---

[17] In fact, the Bankruptcy Court confirmed the Plan on December 6, 2011, *before* this Court's
January 2012 order rejecting Plaintiffs' abstention arguments.  If Plaintiffs thought confirmation
provided additional grounds for abstention, the time for raising those concerns was then.

[18] *See also S.G. Phillips*, 45 F.3d at 708 ("§ 1334(c)(2) requires the district court to abstain from
hearing a non-core matter which can be timely adjudicated in a state court in a previously
commenced action."); *accord In re Freeway Foods of Greensboro, Inc.*, 449 B.R. 860, 877-78
(Bankr. M.D.N.C. 2011) ("The clear majority of cases supports the position that the cause of
action must be pending in state court prior to the bankruptcy for mandatory abstention to
apply."); *In re 3G Props*, 2010 WL 4027770, at *1 (Bankr. E.D.N.C. Oct. 14, 2010) (among the
requirements for mandatory abstention is that "the action was pending when the bankruptcy was
filed"); *In re Container Transport, Inc.*, 86 B.R. 804, 805 (E.D. Pa. 1988) (same).

concern, however, where, as here, the state court action was commenced *after* (and, in this case, long after) the debtor filed for bankruptcy.  Thus, mandatory abstention under 28 U.S.C. § 1334(c)(2) is not available in this case, as Plaintiffs filed their state court case years after Lehman Brothers filed for bankruptcy on September 15, 2008.

*Third*, mandatory abstention is not warranted because Plaintiffs still have not demonstrated that their claims can be "timely adjudicated" in New York state court.  It is settled that "[m]ore than a 'naked assertion' is needed to prove that this proceeding can be timely adjudicated in a state court."  *In re Ames Dep't Stores, Inc.*, 2006 WL 1288586, at \*12 (Bankr. S.D.N.Y. Apr. 19, 2006).  This Court previously found that "Plaintiffs have not provided enough evidence to show that this action would be timely adjudicated in state court.  Rather, they have supplied several reasons for why the action would suffer greater delay in state court."  Dkt. 27 at 11.  This finding is now law of the case and controls the outcome here.[19]  Nonetheless, Plaintiffs' Motion to Abstain does not correct that earlier deficiency.  Plaintiffs submit pages of lawyer argument concerning the "timely adjudication" prong, but they have not supplied any additional *evidence* to meet their burden.  In any event, Plaintiffs' arguments are unpersuasive.[20]

As Plaintiffs agree, a court should "consider the backlog of the state court's calendar (if any) relative to the federal court's calendar."  *Parmalat Capital Fin. Ltd. v. Bank of Am. Corp.*,

---

[19]  *See Mister Sprout, Inc. v. Williams Farms Produce Sales, Inc.*, 881 F. Supp. 2d 482, 490 (S.D.N.Y. 2012) (courts should be loath to revisit previous decisions "in the absence of extraordinary circumstances, such as where the initial decision was 'clearly erroneous and would work a manifest injustice'").

[20] The most Plaintiffs do is to supply the declaration of one of their attorneys concerning a recent experience in the state court system.  The declaration is inapposite for any number of reasons, not the least of which is that the declaration compares the speed of adjudication in cases in the state court Commercial Division with other *state court* cases, not with cases in *federal* court.  *See* Russell Decl. ¶ 5 ("One of the benefits of the Commercial Division approach is to get cases to trial more efficiently tha[n] cases that are not in that division.").

639 F.3d 572, 580 (2d Cir. 2011).  Courts in this Circuit have found that the federal judiciary can

adjudicate cases faster than New York state courts.  *See, e.g.*, *CCM Pathfinder Pompano Bay,*

*LLC v. Compass Fin. Partners LLC*, 396 B.R. 602, 606-08 (Bankr. S.D.N.Y. Oct. 1, 2008)

(finding that even the commercial division of the New York Supreme Court, "which was

established to provide 'efficient, expeditious, sound and inexpensive adjudication' of complex

commercial matters," "has come to experience the kinds of delay that federal courts have been

able, through their smaller dockets, to avoid").  Plaintiffs rely on a report of the Chief Judge's

Task Force on Commercial Litigation, *see* Russell Decl. Ex. A, but that report, as before,

"supplie[s] several reasons for why the action would suffer greater delay in state court."  Dkt. 27

at 11.  The report catalogues delays plaguing the state courts and the commercial division, and

while it offers suggestions for reform, nothing suggests that any of the suggested improvements

have taken root.  *See* Russell Decl. Ex. A at 7 ("In New York County alone, the Justices now

confront a Commercial Division docket with thousands of cases and motions – *and the docket*

*continues to grow*.  This *burgeoning, increasingly complex workload* limits the amount of time

available for judges to prepare for any one case in advance of hearings, affects the atmosphere in

courtrooms and *delays resolution*.").[21]

Plaintiffs also suggest that this case can be timely adjudicated in state court because of

the complexity of the issues and the expertise of the state forum.  But, as noted *infra* at p. 25,

many of the causes of action are governed by Delaware, not New York, law and so New York

state courts have no relative expertise as compared to the federal system.  (And, in any event, the

New York claims are not unusually complex.)  Moreover, the federal courts are already familiar

with the factual and legal background of this action.  Indeed, the fact that Plaintiffs persist in

---

[21] *See also id.* at 11 (pointing out that unlike federal courts, which have magistrate judges to
efficiently handle complex tasks like discovery issues, the state court system lacks such support).

alleging intentional fraud—despite the Second Circuit's holding in *Fried I* that Defendants acted without any fraudulent intent—only emphasizes that the federal system has familiarity with the precise legal and factual questions presented here and can expeditiously resolve the action.

Finally, Plaintiffs erroneously characterize the status of Lehman's Chapter 11 proceeding and argue that state court proceedings would not delay administration of the bankruptcy estate. Pl. Abstention Mot. at 8-9.  Citing cases distinguishing between Chapter 7 and Chapter 11 proceedings, Plaintiffs contend that in Chapter 7 proceedings "bankruptcy jurisdiction is deemed to extend more narrowly."  *Id.* at 9 (citing *Celotex*, 514 U.S. at 310).[22]  But, of course, the Lehman proceedings are Chapter 11 proceedings, not Chapter 7, so that distinction is entirely irrelevant.  And, Plaintiffs' suggestion that remand would not delay administration of the bankruptcy estate ignores that this litigation (including the already-incurred fees and any damages awarded) directly reduces creditors' distributions.

### b.    Discretionary Abstention

Plaintiffs' request for discretionary abstention also fails. "[B]ecause they possess a 'virtually unflagging obligation . . . to exercise the jurisdiction given them,'" federal courts "must be 'sparing' in their exercise of discretionary abstention."  *Refco*, 628 F. Supp. 2d at 446 (citing *Colo. River Water Conservation Dist. v. U.S.*, 424 U.S. 800, 817 (1976)); *see also Rahl v. Bande*, 316 B.R. 127, 135 (S.D.N.Y. 2004) ("[T]here is a presumption in favor of the exercise of federal jurisdiction and against abstention.").  "The movant bears the burden of establishing that permissive abstention is warranted."  *Bozel*, 434 B.R. at 102.  The predominant inquiry in determining whether discretionary abstention is warranted is whether the complaint presents

---

[22] *See also Celotex*, 514 U.S. at 310 ("[I]t is relevant to note that we are dealing here with a reorganization under Chapter 11, rather than a liquidation under Chapter 7.  The jurisdiction of bankruptcy courts may extend more broadly in the former case than in the latter.").

"'particularly unusual' questions of State law." *In re Pan Am.*, 950 F.2d 839, 846 (2d Cir. 1991).

Plaintiffs cannot demonstrate that discretionary abstention is warranted. *First*, the state law claims do not raise complex, novel, or unsettled questions of state law. Rather, "the state law claims are straightforward common-law claims that do not involve arcane or idiosyncratic provisions of state law that would 'warrant abstention based on comity concerns.'" *Refco*, 628 F. Supp. 2d at 446.[23]  Indeed, the only claim that Plaintiffs contend is "complex"—an unconscionable forfeiture claim (*see* Pl. Abstention Mot. at 10)—is governed by Delaware law. The state law claims are thus not complex questions warranting the exercise of discretionary abstention reserved for "extraordinary circumstances." *Colo. River*, 424 U.S. at 817.

*Second*, Plaintiffs allude to comity concerns, but such concerns are put to rest because "the case was promptly removed" and so "the [state] courts have invested no effort in th[e] case." *Winstar Holdings v. Blackstone Grp. L.P.*, 2007 WL 4323003, at *5 (S.D.N.Y. Dec. 10, 2007).

*Third*, discretionary abstention is not warranted because this action has a close relation to, and a direct effect on, the efficient administration of the bankruptcy Plan.  Because the Lehman estate must indemnify any Defendants found liable in this action and owns direct and indirect stakes in several of the entity Defendants, any judgment against Defendants necessarily affects (and diminishes) the assets of the estate.  *See supra* at pp. 5-6, 8-9, 13-16.  Moreover, Plaintiffs' claims are already affecting the bankruptcy estate by depleting insurance policies issued to Lehman.  *See, e.g., Hart*, 2011 WL 1584577, at *5 (remand "unwarranted" in part because "Plaintiff's claims will impact 'what is and is not property of the [bankruptcy estate]'").

---

[23] *See also Rahl*, 316 B.R. at 135 ("[E]ven if New York law applied to the majority of plaintiff's claims, the existence of state law claims does not automatically dictate remand or abstention especially where, as is the case here, the state law claims are not particularly novel or complex."); *Hart v. Bello*, 2011 WL 1584577, at *5 (S.D.N.Y. Apr. 27, 2011) (no remand where claims involved "'well settled areas' including breach of contract and breach of fiduciary duty").

**II.      This Court Retains Subject Matter Jurisdiction over the State Law Claims**

As an independent basis for federal subject matter jurisdiction, the law is clear that this Court retains jurisdiction over the state law claims notwithstanding Plaintiffs' amendments.  The guiding principle that jurisdiction is determined based on facts and circumstances as they exist at the time an action is removed—and that subsequent events cannot divest the court of subject matter jurisdiction—applies with equal force to post-removal amendments.  *See* 14B Charles Alan Wright & Arthur R. Miller, Fed. Practice & Procedure § 3722 (4th ed. 2009) ("Wright & Miller") ("[F]ederal courts often refuse to permit a plaintiff to precipitate a remand to state court by amending the complaint to eliminate the federal claim that was the basis for the removal.  The courts may permit the amendment, but they will retain jurisdiction."); *see also Carnegie-Mellon*, 484 U.S. at 343 (holding that federal courts retain supplemental jurisdiction over removed state law claims even after the federal law claims are eliminated from the lawsuit).[24]  Indeed, Plaintiffs concede as much, stating that "the Court's decision on this Motion is discretionary, not mandatory, in view of the Court's January 25, 2012 Order finding that federal subject matter jurisdiction existed at the time of removal." Pl. Second Remand Mot. at 4-5.

Conceding, then, that federal subject matter jurisdiction exists over the state law claims, Plaintiffs urge the court to exercise its discretion not to retain supplemental jurisdiction over them.  There are sound reasons to reject that request.  *First*, the proceedings are already underway in federal court.  The Parties have engaged in negotiations over procedural matters, including deadlines for filing dispositive motions and responsive pleadings.  Pursuant to the federal rules, the parties have also conducted a Rule 26(f) conference to determine deadlines for

---

[24] *See also* 14C Wright & Miller § 3738 ("Once a case has been removed, the parties may amend the pleadings filed in the state court . . . but, with the exception of amendments to add non-diverse parties that are authorized by [§] 1447(e), a pleading amendment normally will not be permitted to oust the federal court of its subject-matter jurisdiction.").

disclosures, discovery and depositions.  Moreover, notwithstanding their objection to the federal forum, Plaintiffs have propounded requests for the document production under the federal rules, although the Court has for now stayed such discovery pending the outcome of this motion.

*Second*, the state law issues involved here are garden variety breach of contract and fiduciary duty claims that are not unusually complex and that do not require the expertise of the state court to resolve in a timely fashion.  Indeed, several of the claims appear to be governed by Delaware, not New York, law, and so the New York state court has no relative advantage as compared to this Court.  *See*, at a minimum, Am. Compl. V, VII-XII, XIV.

*Finally*, Plaintiffs voluntarily invoked the federal forum by amending their complaint to allege additional claims in federal court.  To be sure, the Amended Complaint—in a transparent attempt to avoid federal jurisdiction—removes references to the federal statutes that formed the basis of federal question jurisdiction.  But the Amended Complaint also adds several new causes of action that were not alleged in Plaintiffs' initial Complaint.  *See* Amended Complaint Counts II & III (alleging, unlike its predecessor, claims for fraudulent concealment and fraudulent inducement).  Having taken advantage of the federal forum to assert additional causes of action, Plaintiffs cannot now complain of having to litigate their case in federal court.  *See Koehnen v. Herald Fire Ins. Co.*, 89 F.3d 525, 528 (8th Cir. 1996) ("Koehnen affirmatively sought leave to file a new complaint in federal court.  By the 'mere filing of an amended petition,' Koehnen 'consented to accept the jurisdiction of the United States court.'").

## CONCLUSION

For the foregoing reasons, Plaintiffs' Second Motion to Remand and "alternative" Motion to Abstain should be denied.

Dated:  April 22, 2013                    Respectfully submitted,

**WEIL, GOTSHAL & MANGES LLP**

By: /s/ Robert F. Carangelo
    Jonathan D. Polkes
    Robert F. Carangelo
    Adam B. Banks
    David P. Byeff
767 Fifth Avenue
New York, NY  10153
Tel: (212) 310-8000
Fax: (212) 310-8007

*Attorneys for Defendants Lehman Brothers Real Estate Associates III, L.P., Lehman Brothers Private Equity Advisers, LLC and Real Estate Private Equity, Inc.*

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**

By: /s/ Richard A. Rosen
    Richard A. Rosen
1285 Avenue of the Americas
New York, NY 10019-6064
Tel: (212) 373-3000
Fax: (212) 757-3990

*Attorney for Defendants Mark A. Walsh, Mark H. Newman, Brett Bossung, Rodolpho Amboss, Kevin Dinnie, Silverpeak Real Estate Partners, L.P. and REPE CP ManageCo, LLC*

**ALLEN & OVERY LLP**

By: /s/ Todd S. Fishman
    Todd S. Fishman
    Patricia M. Hynes
1221 Avenue of the Americas
New York, NY 10020
Tel: (212) 610-6300
Fax: (212) 610-6399

*Attorneys for Defendant Richard S. Fuld, Jr.*

**SIMPSON THACHER & BARTLETT LLP**

By: /s/ Joseph M. McLaughlin
    Joseph M. McLaughlin
    Erika H. Burk
425 Lexington Avenue
New York, New York 10017
Tel: (212) 455-2000
Fax: (212) 455-2502

*Attorneys for Defendants Michael J. Odrich,*
*Christopher M. O'Meara and Thomas Russo*

**CLEARY, GOTTLIEB, STEEN & HAMILTON LLP**

By: /s/ Lewis J. Liman
    Lewis J. Liman
    Diarra M. Guthrie
    David Y. Livshiz
One Liberty Plaza
New York, NY 10006
Tel: (212) 225-2000
Fax: (212) 225-3499

**MARTIN J. AUERBACH, ESQ.**

By: /s/ Martin J. Auerbach
    Martin J. Auerbach, Esq.
1540 Broadway, Suite 1604
New York, NY 10036
Tel: (212) 704-4347
Fax: (212) 304-0175

*Attorneys for Defendant Ian Lowitt*

**PROSKAUER ROSE LLP**

By: /s/ Robert J. Cleary
    Robert J. Cleary
    Dietrich L. Snell
    Mark E. Davidson
    Seth D. Fier
Eleven Times Square
New York, New York 10036-8299
Tel: (212) 969-3000
Fax: (212) 969-2900

*Attorneys for Defendant Erin Callan*

**FRIED FRANK HARRIS SHRIVER &
JACOBSON LLP**

By: /s/ Israel David
    Audrey Strauss
    Israel David
One New York Plaza
New York, NY 10004
Tel:  (212) 859-8000
Fax: (212) 859-4000

*Attorneys for Defendant Joseph M. Gregory*